IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TROY D. PRICE, JR.   :
                 :
v.                :    Civil No. CCB-11-1735
                 :
ATLANTIC RO-RO CARRIERS, INC., *et al.*   :

## MEMORANDUM

Plaintiff Troy D. Price, Jr. ("Price"), defendant/third-party plaintiff Mos Shipping Co. Ltd. ("Mos"), and third-party defendant Rukert Terminals Corporation ("Rukert") have filed various motions in limine seeking to exclude expert testimony. Now pending are Mos's motion to exclude the testimony of Price's expert Thomas Bolcar ("Bolcar motion") (ECF No. 160); Price's motion to exclude the testimony of Mos's expert Walter Curran ("Curran motion") (ECF No. 163); Rukert's motion to exclude the testimony of Mos's expert Robert Jasinski ("Jasinski motion") (ECF No. 159); and Mos's motion to preclude Rukert's witness Steven Landess from offering expert testimony ("Landess motion") (ECF No. 193). The motions have been fully briefed, and no hearing is necessary to their resolution. *See* Local Rule 105.6. For the reasons discussed below, the court will grant in part and deny in part the Bolcar motion, deny the Curran motion, grant the Jasinski motion, and grant in part and deny in part the Landess motion.

## BACKGROUND

In August of 2008, Price, a longshoreman employed by Beacon Stevedoring Corporation ("Beacon"), an affiliate of Rukert, was injured aboard the M/V Valga ("Valga"). Although the

1

parties dispute certain facts, they agree that Price's injuries occurred when a forklift operated by Elliot Nichols, another Beacon employee, fell through an opening in the 'tween deck and struck him.[1]  Trial is scheduled to begin on July 10, 2017.

**ANALYSIS**

I.  Standard for Admission of Expert Testimony

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), district courts perform a "gatekeeping" function to ensure that expert testimony is both relevant and reliable.  *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 588); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).  The source of this obligation is Federal Rule of Evidence 702, which provides, among other things, that an expert's testimony must "help the trier of fact to understand the evidence or to determine a fact in issue," must be "based on sufficient facts or data," and must be "the product of reliable principles and methods."  Fed. R. Evid. 702.

In addition to evaluating relevance and reliability, the trial court also must determine whether the witness is qualified as an expert in the relevant fields.  Even though experiential expert testimony does not "rely on anything like the scientific method," it is not the case that "experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony."  *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting Fed. R. Evid. 702 advisory committee's note).  On the contrary, "an expert may be qualified on the basis of experience."  *Id.* (quoting Fed. R. Evid. 702 advisory committee's note).  To satisfy the reliability requirement, an experiential expert must "explain how [his] experience leads to the conclusion reached, why [his]

---

[1] The court previously discussed the factual background of Price's claims in *Price v. Atlantic Ro-Ro Carriers, Inc.*, 45 F. Supp. 3d 494 (D. Md. 2014).

2

experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Id.*.

II. Motions in Limine

A. Bolcar Motion

Mos has moved to exclude the testimony of Thomas Bolcar, whom Price has designated as an expert in maritime safety. (*See* Joint Proposed Pre-Trial Order, ECF No. 190, at 17.) Bolcar is expected to testify that "the subject accident was caused by the negligence of the vessel through the action/inaction of the [Third Engineer] Alexandr Nosov." (*Id.*) Bolcar has prepared and submitted an expert report, which summarizes his opinions in 11 conclusions. (*See* Bolcar Mot. Ex. A ("Bolcar Report"), ECF No. 160-1, at 5.) He also has been deposed.

Applying *Daubert* principles, the court finds that certain of Bolcar's conclusions satisfy the requirements for admission, while others do not.[2] Thus, Bolcar may testify as follows. So long as he adequately connects his experience to his conclusions, *see Wilson*, 484 F.3d at 274, Bolcar may offer opinions regarding potential issues associated with the operation of forklifts on board a ship (i.e., driver error and fluid leaks); industry standards for the safe operation of forklifts in roll-on, roll-off stevedoring environments; and the respective roles and responsibilities of the individuals on board the Valga on the day of the incident. (*See* Bolcar Report at 5 (Conclusions 2, 4, 7, 8, 9, 10).) Testimony in these areas will assist the jury in resolving key issues in the case, and Bolcar's report sufficiently describes the basis for his opinions, including a review of photographs and diagrams, research into applicable international standards, and reliance on "40 years of experience sailing merchant vessels, stevedoring, and

---

[2] For purposes of the motion in limine, Bolcar's qualifications are not at issue. (*See* Bolcar Mot. Mem., ECF No. 161, at 3 (explaining that Mos will address Bolcar's experience on cross-examination, rather than seeking exclusion of his testimony on that basis).) Mos does, however, challenge the reliability and relevance of his conclusions.

performing waterfront safety duties," as well as "5-years [*sic*] of experience as a stevedore manager loading and unloading this specific type of vessel (sister ships) engaged in the US East Coast – Caribbean Trade." (*See* Bolcar Report at 1-2.) To the extent that Mos disagrees with Bolcar's conclusions, it may address these issues on cross-examination or through its own admissible expert testimony. *See Daubert*, 509 U.S. 579 at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Although the factual record does not necessarily support Bolcar's conclusions that guarding the opening with a crewman or surrounding it with a fence would have prevented the accident, (*see* Bolcar Report at 5 (Conclusions 5, 6)), he will be permitted to testify based on his specialized knowledge of such safety precautions, and Mos may challenge his conclusions in the manner described above.

Bolcar may not, however, offer opinions that are speculative, (*see id.* (Conclusion 3)), or simply conclusory as to the ultimate determination of liability, (*see id.* (Conclusions 1, 11)). Such opinions are not reliably connected to his experience in the industry, nor are they helpful to the jury. The court therefore will grant in part and deny in part the Bolcar motion, and Bolcar may testify in accordance with the above limitations.

    B. <u>Curran Motion</u>

Price has moved to exclude the testimony of Walter Curran, Mos's expert in "the field of stevedoring in the Port of Baltimore, among others." (*See* Joint Proposed Pre-Trial Order at 18.) Curran is expected to testify "regarding the respective responsibilities of the individual longshoreman, stevedore employers, and vessel owners as they pertain in general to safety in

stevedoring operations aboard ocean-going vessels." (*Id.* at 18-19.) He will offer the opinion that "MOS violated no safety standards or industry standards in connection with the plaintiff's accident." (*Id.* at 19.)

In order to be qualified as an expert under Rule 702, a witness must have "knowledge, skill, experience, training, or education" in the subject area in which he intends to testify. Fed. R. Evid. 702. The required expertise depends on the nature of the opinion offered. *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984); *see also Kumho Tire*, 526 U.S. at 150 ("[T]here are many different kinds of experts, and many different kinds of expertise."). The court finds that Curran is qualified to offer expert testimony in the areas identified in his expert report. As reflected in Curran's curriculum vitae, he has decades of experience in the marine terminal and stevedoring fields. (Opp. Curran Mot. Ex. A ("Curran CV"), ECF No. 169-1.) The roles he has held include Vice President, Operations of I.T.O. Corporation of Baltimore, a stevedoring and marine terminal operator in the Port of Baltimore; Deputy Executive Director of the Maryland Port Administration; Director-Operations and President/Corporate Director for The Holt Group Inc., a private transportation services company whose business included stevedoring and terminal operations; consultant on maritime-related transportation services; and expert witness in stevedoring and terminal operations. (*Id.*)

The conclusions summarized in Curran's expert report, (*see* Curran Mot. Ex. 1 ("Curran Report"), ECF No. 163-1), are both relevant and reliable. Curran's central conclusion is that, under industry standards and relevant OSHA regulations, the responsibility for ensuring safe working conditions lies with the stevedore company, not with the crew of the vessel. His opinions directly contradict those of Price's expert, Thomas Bolcar, and they go to a key issue in

the case: whether Nosov had control over or responsibility for the operation, such that Mos is liable for Price's injuries. Further, Curran's report identifies the sources upon which he relied, including deposition testimony and applicable OSHA regulations, and states that he is applying expertise "within the fields of marine transportation and cargo handling." (*See* Curran Report at 2-3.)

In arguing for exclusion, Price contends that Curran's opinions are based on a misinterpretation of Nosov's deposition testimony. Because there is a sufficient basis in the record for Curran's interpretation, however, it is for the jury to decide whether to credit his testimony. The court therefore will deny the Curran motion, and Curran may testify in accordance with his expert report.

    C. Jasinski Motion

Rukert has moved to exclude the testimony of Robert Jasinski, Mos's expert in "the field of forklift operations and training and accident investigations." (*See* Joint Proposed Pre-Trial Order at 19.) Jasinski is expected to testify "regarding applicable forklift industry safe practices, OSHA regulations, and ANSI/ITSDF standards as they pertain to powered industrial trucks, as well [as] the cause of the accident." (*Id.*) "He will opine that a number of OSHA regulations and ANSI/ITSDF standards were violated by Rukert/Beacon in the forklift training of Elliott Nichols, and that the plaintiff's accident was caused or contributed to by compromised brakes on the forklift that Mr. Nichols was operating at the time of the accident." (*Id.*)

Jasinski's February 2016 expert report addresses three main topics: the brake system on the forklift driven by Elliot Nichols, Rukert's forklift maintenance program, and

Rukert/Beacon's operator training program.[3] (*See* Jasinski Mot. Ex. B ("Feb. 2016 Jasinski Report"), ECF No. 159-3.) The court will exclude Jasinski's opinions on the first topic because he has not shown that they are the product of reliable principles and methods. The court will exclude his remaining opinions because he is not qualified to offer them.

Jasinski does not claim to have experience in the maritime terminal or stevedoring environments. Rather, he identifies his area of expertise as "powered industrial truck safety." (Feb. 2016 Jasinski Report at 11.) Within this area, Jasinski has worked primarily as a salesman of electric forklifts and in the forklift battery industry. (Jasinski Mot. Ex. A, ECF No. 159-2 ("Jasinski Dep. Tr."), at 13-25; Opp. to Jasinski Mot. Ex. A ("Jasinski CV"), ECF No. 170-1.) Since 1998, Jasinski has been the president of a company providing forklift operator and instructor training. (Jasinski CV at 2; Opp. to Jasinski Mot. Ex. B ("Jasinski Decl."), ECF No. 170-2, ¶ 3.) He has served as an expert witness in "approximately 95 lawsuits, over 90 percent of which involved personal injuries related to the operation of forklifts and similarly powered industrial trucks." (Jasinski Decl. ¶ 10.)

This general experience in forklifts and forklift safety does not qualify Jasinski to offer opinions as to whether Rukert/Beacon's maintenance and training programs were adequate to prevent accidents during stevedoring operations on board a ship. As Jasinski himself makes clear, the relevant safety issues and standards are specific to the Valga's operating environment. (*See* Jasinski Report at 2 ("Marine terminals and on-board ship operations are very busy places, subjecting pedestrians and equipment operators to numerous hazards."); *id.* at 2 ("Forklift operating conditions on board ship can present numerous safety concerns."); *id.* at 3 ("Leaks . . . do occur in Ro/Ro operations and cannot be completely eliminated."); *id.* at 11 ("[G]iven the

---

[3] Jasinski prepared and submitted a second expert report in July 2016, which rebuts the opinions expressed in the reports of experts Stanley Pulz, dated May 30, 2016, and Joseph Karasek, dated June 1, 2016.

known fact that the potential for traction could be compromised, the forklift tire type chosen by Rukert/Beacon management for the application aboard ship may have contributed to the incident."). To the extent that Jasinski is offering opinions about maritime safety, he is not qualified to do so. *See Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392-93 (D. Md. 2001). To the extent that he is offering opinions about forklift safety in general, they are irrelevant and therefore not helpful to the jury.[4]

By contrast, although it is a close call, the court finds that Jasinski is qualified to opine that a malfunctioning brake system caused or contributed to the accident, based on his extensive experience investigating forklift accidents. (*See* Jasinski Decl. ¶¶ 11-15.)

The remaining questions, then, are whether Jasinski's opinions regarding the brake system are reliable and relevant. His expert report identifies three bases for his opinions: photographs of a 32-foot skid mark left by Nichols's forklift, the deposition testimony of Elliot Nichols, and the deposition testimony of Joseph Rawlings. Jasinski's report summarizes this evidence as follows:

> Forklifts of this type have only one braked axle, that is the front or fulcrum point axle. When an operator applies heavy pressure to the brake pedal, as in a panic stop as was the case here, the brakes would lock up on both wheels and two parallel skid marks would be present. Considering the long distance of the skid mark, 32 feet, and appearance of only one visible skid mark, this would indicate that Nichols was operating a forklift with a compromised brake system. . . .
>
> Nichols states numerous times in his deposition that the forklift he was operating had brake problems, both the service brakes and the parking brake. . . .
>
> In Joseph Rawlings['s] deposition (pg 44-1) Q "Did you notice whether the tires on his forklift were still rotating?" A "They was moving, they was going backwards" (pg 44-7) Q "Would you think if he put the brakes on, the wheel would stop turning?" A "Well his feet was on the brake, it should have stopped

---

[4] Mos contends that Jasinski's opinions should be admitted because they are consistent with the opinions of other experts in this case. Although such acceptance may be a factor in evaluating reliability, it does not suspend the requirement that an expert possess the qualifications to offer opinions in a given subject matter area.

> but it didn't." (pg 45-1) Q: "As best as you can recall, after Elliot put his foot on the brakes did the tires on the forklift stop rotating?" A "No." Q So you have a memory that they continued to rotate?" A "They was still moving. [T]he wheels was still moving."

Jasinski Report at 6.

Mos states that it is offering Jasinski as an expert based "[not] on his education, but on his lengthy experience in investigating forklift accidents." (Opp. to Jasinski Mot., ECF No. 170, at 8.) It is therefore significant that Jasinski arrived at his conclusions without examining the brake system in question or determining whether any of the factors he lists as potential causes of the alleged brake malfunction did, in fact, exist at the time of the accident. (*See* Jasinski Report at 6 (noting that the causes could include "unevenly worn brake components, contamination on the brake linings from brake fluid or transmission oil, or an uneven brake adjustment caused by a failure of the automatic brake adjustment system").) Applying the standard for experiential experts, *see Wilson*, 484 F.3d at 274, the court finds that Jasinski failed to apply reliable principles and methods in determining causation based solely on photographs and corroborating deposition testimony. As a separate basis for exclusion, the court concludes that Jasinski has not established a sufficient link between his general experience in forklift safety and the technique he applied in this case, forensic analysis of photographic evidence. The court therefore will exclude Jasinski's testimony, which has a "greater potential to mislead than to enlighten." *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

### D. Landess Motion

Finally, Mos has moved to exclude expert testimony by Steven Landess, the General Manager of Beacon at the time of the accident. Rukert seeks to offer Landess, whom it previously designated as a fact witness, as a hybrid fact witness and "[e]xpert in safety training

and evaluation in the workplace of maritime forklift tractor operators." (Joint Proposed Pre-Trial Order at 20-21; *see also* Rukert's Proposed Witness List, ECF No. 188, at 1 (identifying Landess as both a fact and expert witness).) Landess has not submitted an expert report. He is expected to opine that "the Beacon Lift Truck Safe Operation Course, the recertification of operators, and the refresher training and workplace evaluations complied with OSHA regulations and maritime stevedoring standards of the industry." (Joint Proposed Pre-Trial Order at 21.)

Mos raises two arguments in opposition to the admission of Landess's expert testimony. First, it contends that the court should preclude Landess from offering expert testimony because Rukert did not identify him as an expert until June 5, 2017. Second, it argues that Rukert has failed to make the required disclosure under either Federal Rule of Civil Procedure 26(a)(2)(B), which applies to experts who are required to issue expert reports, or 26(a)(2)(C), which applies to experts who are not.

Rukert responds that Rule 26 does not apply because that Landess's opinions constitute lay opinion testimony governed by Federal Rule of Evidence 701. This explanation is puzzling, as Rukert itself has identified Landess as an expert in recent submissions. (*See* Joint Proposed Pre-Trial Order at 20-21; Rukert's Proposed Witness List at 1.) The court will take Rukert's prior representations at face value, finding that Landess is an expert witness subject to the disclosure requirements of Rule 26.

The question, then, is whether Rukert has complied with Rule 26 and, if it has not, whether to exclude Landess's proposed expert testimony. Rule 26 requires an expert witness to prepare and submit a report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve

giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Due to the nature of their testimony, "hybrid" witnesses—that is, witnesses who give testimony "arising out of personal observations made in the normal course of duty"—are exempt from the expert report requirement. *See Nat'l R.R. Passenger Corp. v. Ry. Express, LLC*, 268 F.R.D. 211, 216 (D. Md. 2010) (citations omitted). Because Landess's proposed opinion testimony relates to his role as General Manager of Beacon, (*see* Joint Proposed Pre-Trial Order at 21), the court finds that he is a hybrid witness. Under Federal Rule of Procedure 26(a)(2)(C), however, an expert witness who is not required to submit a report still must disclose "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). It is undisputed that Rukert has not made such a disclosure. (*See* Opp. to Landess Mot., ECF No. 200, at 2 (arguing that Landess is not subject to either disclosure requirement under Rule 26 because Federal Rule of Evidence 701 controls).) The court therefore must decide whether preclusion is warranted.

Federal Rule of Civil Procedure 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In determining whether a party's failure to disclose was substantially justified or harmless, courts in this circuit look to five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to

disclose the evidence." *S. States Rack And Fixture v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The party facing sanctions has the burden of establishing that the failure to disclose was justified or harmless. *Carr v. Deeds*, 453 F.3d 593, 602 (4th Cir. 2006), *abrogated on other grounds by Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010) (per curiam).

Applying this five-factor test, the court concludes that Rukert's non-disclosure of the substance of Landess's proposed expert testimony is harmless insofar as he has already expressed those opinions in his deposition and accident report. (*See* Opp. to Landess Mot. Ex. A ("Landess Dep. Tr."), ECF No. 200-1.) To the extent that Landess plans to offer new opinions related to the cause of the accident, Rukert's maintenance program, Rukert/Beacon's operator training program, or other topics, however, such testimony would run afoul of the test set out in *Southern States*. Because Rukert did not disclose—and, indeed, still has not disclosed—the substance of these new opinions, allowing the testimony would create surprise at trial. Mos has not had the opportunity to cure the surprise. Rukert has provided no explanation for the non-disclosure, arguing instead that Landess's testimony should be treated as lay opinion testimony governed by Federal Rule of Evidence 701. Finally, because Rukert seeks to offer Landess's expert testimony in part to respond to the opinions of Mos's expert, Robert Jasinski, the importance of his new opinions is lessened by the court's exclusion of Jasinski's testimony.[5] The sole factor in favor of admission is that it would not be especially disruptive to the proceedings, given that Landess will testify as a fact witness regardless of whether the proposed expert testimony is admitted.

The court therefore will allow Landess to testify as an expert as to opinions that were previously disclosed, but not as to new and non-disclosed opinions.

---

[5] Even if the court were to allow Jasinski's testimony, however, the remaining factors would militate against admission.

## CONCLUSION

For the reasons discussed below, the court will grant in part and deny in part the Bolcar motion, deny the Curran motion, grant the Jasinski motion, and grant in part and deny in part the Landess motion.

7/6/17                                                      /S/
Date                                                        Catherine C. Blake
                                                            United States District Judge