# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TROY D. PRICE, JR. :
:
:
v. : Civil No. CCB-11-1735
:
:
ATLANTIC RO-RO CARRIERS, INC., *et al.* :
:
:

## MEMORANDUM

Third-party defendant The Rukert Terminals Corporation ("Rukert") has filed a motion for summary judgment in this long-running litigation, alleging that Mos Shipping Co., Ltd., ("Mos") is barred by the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 *et seq.*, from pursuing a claim for indemnity or contribution against Rukert. No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the motion for summary judgment will be granted.

## BACKGROUND

This action arises out of an injury suffered by plaintiff Troy D. Price, Jr. ("Price) while helping to unload freight aboard a cargo vessel owned and/or operated by Mos. At the time of his injury, Price was employed as a longshoreman by Beacon Stevedoring Corporation ("Beacon") and worked on a vessel moored at a pier in one of Rukert's terminals.

Rukert is a privately owned Maryland corporation that operated a marine terminal on South Clinton Street in Canton, Maryland. (John L. Coulter Aff. ¶ 2, ECF No. 140-2.) Beacon is a privately owned Maryland corporation that provides stevedoring services exclusively for ships loading and unloading at Rukert's South Clinton Street Terminal. (*Id.* at ¶ 2.) Rukert and Beacon

1

are owned by the same two families and share a Board of Directors. (*Id.* at ¶¶ 9–10.) The CEO and President of Rukert are the President and Executive Vice President, respectively, of Beacon. (*Id.* at ¶¶ 7–8.) The Boards of Directors for the two companies meet on the same day in immediate succession, (*id.* at ¶ 11), although there is a separate agenda for each company's business, (John L. Coulter Dep., pp. 54:13-20, ECF No. 173-1).

The two companies operate out of the same offices in Baltimore, Maryland, and share the same post office box and fax number. (John L. Coulter Aff. at ¶¶ 4–6.) All management positions at Beacon are on the payroll at Rukert. (John L. Coulter Dep., pp. 34.) Beacon pays Rukert a monthly fee of $13,900 for administrative and management services it receives from Rukert. (*Id.* at 35:9-19.) Rukert and Beacon are both insured for LHWCA and Maryland Workers' Compensation Act claims under the same policy, written in Rukert's name, which is currently making payments to Price for compensation and medical expenses. (John L. Coulter Aff. at ¶ 13; Reply in Supp. of Mot. Summ. J. 5, ECF No. 182.) Beacon's employees pay into Rukert's retirement plan and are covered under Rukert's healthcare plan, although Beacon pays for its employees' shares in those plans. (John L. Coulter Dep., pp.8:13–9:2, pp. 50.)

The companies maintain separate bank accounts and separate financial statements. (Mem. in Opp'n to Summ. J. Mot. 12, ECF No.173; Beacon Bank Statement, ECF No. 173-5; Rukert Bank Statement, ECF No. 173-6.) At various times, Rukert will loan money to Beacon and Beacon will loan money to Rukert. (John L. Coulter Dep., pp. 20–25.) The loans carry interest and are paid off "usually pretty quickly." (*Id.* at pp. 20.) While paid on a separate payroll, Beacon's employees work exclusively at Rukert's terminal and work within the terminal for Rukert when there are no loading or unloading tasks to complete. (John L. Coulter Aff. at ¶ 5, ECF No. 182-1.)

Price seeks compensation under the LHWCA, which "establishes a comprehensive federal workers' compensation program" that provides longshoremen with medical benefits for work-related injuries. *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994). An injured longshoreman's employer must pay the statutory benefits regardless of fault, but the employer is shielded from further liability. *Id.* Price filed a complaint against Mos under Section 905(b) of the LHWCA, which permits a longshoreman to "seek damages in a third-party negligence action against the owner of the vessel on which he was injured" even though he has received benefits from his employer as mandated by the LHWCA. *Id.*

In October 2011, Mos filed a third-party complaint against Rukert, alleging negligence in maintaining forklifts operated by Beacon employees and failure in properly training and certifying Beacon employees in the operation of forklifts. (Third Party Compl. ¶¶ 13–16, ECF No. 16.) In February 2017, Rukert filed a motion for summary judgment, claiming to operate as a single enterprise with Beacon and therefore denying further liability under the LHWCA. (Mot. for Summ. J., ECF No. 140). Mos responded, arguing Rukert was precluded from raising the affirmative defense due to waiver or collateral estoppel, and that further discovery was necessary to determine the level of integration between Rukert and Beacon. (Opp'n to Mot. for Summ. J., ECF No. 144). After limited additional discovery relating to the corporate and financial structure of Rukert and Beacon, the parties submitted supplemental briefings. (*See* ECF Nos. 155, 173, 182).

## ANALYSIS

I. Waiver

Mos argues that Rukert waived its statutory immunity defense by failing to raise it as an affirmative defense in its answer to the complaint. As "it is well established that an affirmative

3

defense is not waived absent unfair surprise or prejudice," Mos asserts that its inability to conduct discovery into the financial relationship between Rukert and Beacon resulted in unfair surprise and prejudice. *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 n. 3 (4th Cir. 2004). Courts have found, however, that "affirmative defenses raised for the first time in summary judgment motions may provide the required notice." *Grunley Walsh U.S., LLC v. Raap*, 386 F.App'x 455, 459 (4th Cir. 2010)[1]; *see, e.g.*, *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612–13 (4th Cir. 1999) (noting that plaintiff had "ample opportunity to respond" to affirmative defense first raised in defendant's summary judgment motion).

To be sure, Rukert allowed more than five years to lapse before raising the statutory immunity issue in its motion for summary judgment. Mos, however, had ample opportunity to respond to Rukert's arguments. The parties were allowed to conduct additional limited discovery related to the financial relationship between Rukert and Beacon and fully briefed the motion. (*See* April 2017 Scheduling Ltr, ECF No. 157.) Mos therefore has shown no unfair surprise or prejudice from consideration of the statutory immunity issue.

II. Collateral Estoppel

Mos also argues that Rukert is collaterally estopped from asserting single entity status by the Fourth Circuit's ruling in *N.L.R.B. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 764 F.2d 234, 237 (4th Cir. 1985).

The doctrine of collateral estoppel bars a party from relitigating an issue of fact or law determined against that party in an earlier action, even if the second action differs from the first one. *Montana v. United States*, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a

---

[1] Unpublished cases are cited only for the soundness of their reasoning and not for any precedential value.

party to the prior litigation.") (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)); *United States v. Wight*, 839 F.2d 193, 196 (4th Cir.1987). Nonmutual offensive collateral estoppel, the type of collateral estoppel raised here, allows a non-party to a previous action to prevent a defendant in the current action from relitigating issues already decided against him in that previous action. *Parklane Hosiery*, 439 U.S. at 331–32 (holding that nonmutual offensive collateral estoppel is permissible).

The Fourth Circuit has held that, in order for collateral estoppel to apply, the party asserting it must establish that:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum.

*Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). The Fourth Circuit has also noted the "dynamic nature of the shipping industry, with its constantly changing economic climate and regularly changing fleets, ports, and operations," in refusing to apply collateral estoppel to a situation where the earlier adjudication "reflected the status of the defendant only as it existed several years prior to the accrual of the [present] cause of action." *Dracos v. Hellenic Lines Ltd.*, 705 F.2d 1392, 1397 (4th Cir. 1983).

The Fourth Circuit's affirmation of a National Labor Relation Board ("Board") ruling made in 1982 does not preclude this court from considering the issue, as the relationship between Rukert and Beacon has significantly changed in the past thirty-five years.

*N.L.R.B. v. Int'l Longshoremen's Ass'n* concerned the use of union workers in the operation of a crane erected by Rukert. 764 F.2d at 236. The union contended that Rukert and Beacon were a single employer and therefore Rukert was contractually bound to employ union

5

workers by virtue of Beacon's collective bargaining agreement with the union. *Id.* at 238. The Board determined that Rukert and Beacon were separate employers, and the Fourth Circuit affirmed. *Id.* at 237. The Fourth Circuit focused on the companies' separate ownership, operations, and control of labor relations. *Id.* at 239. Separate control of labor operations was a "strongly probative finding," as Beacon's labor relations were governed by the union's grievance procedures and Rukert's were handled directly by management. *Id.*

The relationship between Rukert and Beacon has changed since the Board's determination. Most significantly, Beacon is no longer a member of the Steamship Trade Association of Baltimore, and therefore no longer operates under collective bargaining agreements with a maritime labor union. (John L. Coulter Aff., ¶ 2, ECF No. 155-2.) Instead, Beacon employee matters are managed and administered by Rukert. (*Id.* at ¶ 5.) The Fourth Circuit's affirmation of the Board's determination that Rukert and Beacon were separate entities reflected the status of the two companies as they existed in 1982, not their present situations. Collateral estoppel does not apply, and therefore this court may consider whether Rukert and Beacon constitute a single entity under the LHWCA.

III. Single Entity Status

As an injured longshoreman's exclusive remedy against an employer is the LHWCA, the employer cannot be liable for indemnity or contribution to other defendants. 33 U.S.C. § 905(b). Rukert asserts that it works in concert with Beacon as a single enterprise and therefore cannot be liable to Mos. To operate as a single entity under the LHWCA, companies must have "interrelation of operations, common management, centralized control of labor relations and common ownership." *Claudio v. U.S.*, 907 F. Supp. 581, 588 (E.D.N.Y. 1995) (applying criteria from the National Labor Relations Act ("NLRA") to a single entity analysis under the LHWCA).

6

The single entity/single employer standard has been well developed under the NLRA. *See* 29 U.S.C. § 152. Under the NLRA, "the single employer doctrine is a creation of the [Board] which allows it to treat two or more related enterprises as one employer within the meaning of the [Act]." *Grane Health Care v. N.L.R.B.*, 712 F.3d 145, 150 (3d Cir. 2013). In determining single employer status, the Board considers four factors: "(1) functional integration of operations; (2) central control of labor relations; (3) common management; and (4) common ownership." *Id.* (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982). Single employer status depends on a totality of the circumstances and is characterized overall by "an absence of an arm's length relationship found among unintegrated companies." *Browning-Ferris*, 691 F.2d at 1122. Courts also have found the "common usage of office facilities and family relationships between persons involved in the purportedly discrete companies" relevant. *N.L.R.B. v. 675 West End Owners Corp.*, 304 Fed. App'x 911, 913 (2nd Cir. 2008).

Instead of the single entity standard developed under the NLRA and applied in LHWCA cases, Mos relies on a standard under New York State Law for determining if two entities are integrated. *See Longshore v. Davis Sys. of Capital Dist.*, 304 A.D. 2d 964, 965 (2003), *Buchner v. Pines Hotel, Inc.*, 87 A.D.2d 691, 692 (1982), *aff'd*, 58 N.Y.2d 1019 (1983). Neither of the two cases that Mos points to for authority, however, discuss the single entity standard. *Longshore* found that two entities were not alter egos of each other. *Longshore*, 304 A.D.2d at 966. Alter ego status does not necessarily equate to single entity or single employer status. Under the NLRA, for example, the test for determining alter ego status is different from the test for determining single employer status. *Compare Grane Health Care*, 712 F.3d at 150 (describing the four-factor test for single employer status), *with N.L.R.B. v. Kodiak Elec. Co.*, 70 Fed. App'x

7

664, 667 (4th Cir. 2003) (setting forth the test for determining alter ego status). Similarly, *Buchner* focuses on the existence of a joint venture, also a determination different from single employer status. 87 A.D.2d at 692. The court finds these authorities unpersuasive.

Mos argues that Rukert and Beacon do not have functional integration of operations because of their separate financial accounting practices. To be sure, the two companies maintain separate accounting practices and bill clients separately for their work. Their financial management, however, ultimately is under the control of the same employees and identical Boards of Directors. While the companies maintain separate records of their transactions, they often exchange capital and labor between the two corporations. Given the totality of their operations, their separate financial practices do not overcome the functional integration of Rukert and Beacon.

Rukert and Beacon's labor relations are centrally controlled by Rukert's management. The nonunion employees of both companies pay into Rukert's retirement system, are reimbursed under Rukert's healthcare reimbursement plan, and are covered under Rukert's workers' compensation insurance.[2] Rukert and Beacon are under common management, with overlapping officers and identical Boards of Directors, and common ownership, with private ownership by the same two families.

The undisputed facts regarding Rukert and Beacon describe two integrated companies under the centralized control of Rukert. Accordingly, the two corporations operate as a single entity and, under the LHWCA, Mos is barred from pursuing any claims of indemnity or contribution against Rukert.

---

[2] The centralization of labor relations is such that Price, when filing his original complaint, described himself as "employed as a harbor worker by Rukert Terminals Corporation, a stevedoring company." (Compl. ¶ 5, ECF No. 2.) Price did not name Rukert as a defendant.

8

## CONCLUSION

For the reasons discussed above, the court will grant Rukert's motion for summary judgment.

July 7, 2017  /S/
Date  Catherine C. Blake
United States District Judge